## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

ANTHONY F. BELMONTE,

      Plaintiff,

         v.

EXAMINATION MANAGEMENT
SERVICES, INC.,

      Defendant.

No. 05 C 3206
Judge James B. Zagel

## <u>MEMORANDUM OPINION AND ORDER</u>

This case started as an unusually obscure ERISA claim by Belmonte, a retired employee of Examination Management Services, Inc. ("EMSI"). I dismissed the initial, flawed complaint (with leave to re-plead) primarily because Plaintiff had no standing to complain under ERISA and, if he had standing, he had failed to pursue administrative remedies. I also noted that he had sued the employer instead of the plan and sued late in the day, since he had been told many years before that he would not participate in the EMSI Plan. However, I did not rely on these additional elements in deciding to dismiss the case.

Now Plaintiff asserts that he did not pursue a claim under the EMSI Employee Plan, which is why he sued the employer. Rather, he is suing for benefits under the EMSI Belmonte Plan. He never got a copy of such a Plan and therefore could not exhaust his administrative remedies. He was not late in filing because, unlike with the EMSI Employee Plan, he was not told early on that he would not benefit from it. I infer from the statements in the original Complaint and the Amended Complaint that there is no written EMSI Belmonte Plan. This is

why he never received a copy of it, why there are no administrative remedies and why he sues the employer rather than the plan and its administrators.

Correctly read, the complaint alleges that, when Belmonte was hired, he was told he could not participate in the regular employee plan paying $1,000 per month for fifteen years because he was too old and not in good health.[1] The people at EMSI apparently told Plaintiff that EMSI would give him the same benefits anyway. When, in 1998, Belmonte fully retired after about twelve years on the payroll, EMSI kept its word and paid him $1,000 per month for five years. In 2003 it stopped paying. Belmonte asked why and an EMSI lawyer told him there never was a plan. When Belmonte retained counsel, EMSI conceded that such a plan did exist.

The plan is said to be a Top Hat plan. Such plans are usually implemented for key employees (which Belmonte's contract said he was). Top Hats are non-qualifying, unfunded retirement plans exempt from ERISA regulations. A written plan is not required, *see In re New Valley Corp.*, 89 F.3d 143, 149 (3rd Cir. 1996), but there was an appropriate writing for a Top Hat Plan filed with the Department of Labor.[2] The exhibits to Belmonte's complaint establish that he did receive documents about the Top Hat Plan. These showed the level of benefits, that

---

[1]This denial of participation may well be illegal, but it was done in the very early 1990s, and the time to complain about it has passed.

[2]I take judicial notice that EMSI filed a registration statement with the Department of Labor under 29 C.F.R. § 2520.104-23(b). The cut-off of benefits to Belmonte and the filing were, I infer, a product of some internal reconsideration of the plan. In August 2003 Belmonte's benefits were cut off. In-house counsel told him there was no plan but, after he retained counsel, they told him there was a plan. EMSI says in its reply brief that the Department of Labor statement "was required to be filed 'within 120 days after the plan becomes subject to Part 1' of ERISA . . . . The statement was filed on November 11, 2003, shortly after EMSI determined that the Alleged Top Hat Plan could be construed as a top hat plan. The statement also was filed under the Department of Labor's Delinquent Filer Voluntary Compliance Program."

he was to receive them and that the funds came from the assets of EMSI. Obviously he knew about the plan because he got the benefits and does not assert surprise at receipt of the checks. So, he is justified in suing EMSI as plan administrator and he has standing to do so. The complaint that he did not receive a written copy of the plan is of no value since non-qualified plans need not comply with that ERISA requirement. What remains in question between Plaintiff and Defendant is exhaustion of remedies.

There was, I think, a remedy. Belmonte's lawyer spoke with EMSI. EMSI sent him a letter setting forth the appeals procedure under the Top Hat Plan. These procedures were not followed and, as I found earlier, the original complaint (of which I can take judicial notice here) makes it clear that Belmonte was aware of his appeal rights and did not exercise them. There are two arguments that might excuse the failure to follow administrative procedures.

One argument would be that, given the uncertainty in EMSI about the top hat plan (evidenced by the circumstances leading to the filing with DOL), the appeal remedies were not clearly understood and could not be effectively carried out. But, even if this is true, it does not carry the day. By August 26, 2004, the DOL filing had been made. Belmonte, represented by counsel, had sought review and had been denied and, in writing, told that "[i]f Mr. Belmonte does not agree with the reasons for the denial, he may request a review of this decision within 180 days of the receipt of this letter."[3] He did not do this and failed to pursue his administrative remedies which is a requirement even for top hat plans.

---

[3] The final reason given was that the top hat plan was for five years, not fifteen as in the EMSI Employee Plan.

Belmonte actually seeks to excuse this failure on grounds of futility, which is a valid reason to forego administrative remedies. *See Ruttenberg v. United States Life Ins. Co.*, 413 F.3d 652, 662 (7th Cir. 2005); *Carter v. Signode Industries, Inc.*, 688 F.Supp. 1283, 1287 (N.D. Ill. 1988). Belmonte pleaded futility in the complaint, and futility is a question of fact. *See Abbott Radiology Assoc's v. Sullivan*, 801 F.Supp. 1012, 1018 (W.D.N.Y. 1992). Courts are cautious about allowing routine claims of futility and may require more than a conclusory pleading. There is more than conclusory pleading here. The letter denying the claim (an exhibit of the complaint) states that appeal is to be made to a named individual, an in-house counsel. The other exhibits to the complaint show that the individual was the same person who wrongly told Belmonte that there was no plan and then later told Belmonte that there was a plan, but he did not qualify because he was not employed at his 65th birthday (which would have meant that the five years of payments were improperly paid). The final denial rationale was quite different and was consistent with the five years of payments. In the exhibits, there is a letter, obviously the product of discussions between this individual and Belmonte's lawyers, in which it is written that "EMSI's position has not changed." This letter was sent before the decision of August 26, 2004. Simply stated, Belmonte says that an appeal before an individual who has demonstrated a lack of knowledge of the relevant facts and has indicated an unwillingness to alter his position, can rightfully said to be futile despite the very narrow ambit of the futility doctrine. *See Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir. 1996). This may not be true, but considering the circumstances of the case, Belmonte is entitled to try to prove the futility he alleges in his complaint.

The remaining question is where the case should be heard. ERISA venue is proper in the districts where the plan is administered, where the breach occurs or where the defendant may be found. I think EMSI can be found here and that the breach may have occurred here, at least in part, so I will not dismiss the case for improper venue,[4] but the case has no business being in this District. With the possible exception of Belmonte himself, every witness and document is in Dallas, where the plan is administered and EMSI is run. Even Belmonte's evidence may not be needed and, if needed, it is not likely to be extensive. The apparent range of disagreement between the parties is whether the benefit is five years in duration or fifteen. There is no indication that Belmonte would testify to anything other than what he said was promised him and the documents he saw. At most, this is a small part of evidence needed to decide the case. The issue will be what the top hat plan provides and how it was administered and construed. Even assuming that EMSI does a lot of work in Illinois, the work that is relevant here is all done in Dallas. Given the fact that I would not impose upon EMSI the burden of providing witnesses and documents in Chicago during discovery, it is clear that the convenience of the parties is strongly in favor of the Northern District of Texas where all, or virtually all, of the proof of this claim can be found.

---

[4]EMSI has an office in Illinois and is registered to do business in Illinois with the Secretary of State as a foreign corporation. Belmonte lived and worked in this District throughout his tenure with EMSI and, after a hiatus in Florida, now lives here. If he is entitled to the claimed benefit, at least some part of the breach occurred in this District. I do take into account that his residence in Illinois is relatively recent and throughout most of the period of this litigation he lived in Florida, wherein the alleged breach primarily occurred. His residence these months in Illinois is enough to satisfy the mandatory requirement of the venue rules. But it is entitled to little weight in deciding discretionary transfer under §1404(a).

Page 5 of 6

For the aforementioned reasons, EMSI's motion to dismiss the first amended complaint for failure to plead a claim is denied, EMSI's motion to dismiss for improper venue is also denied and EMSI's motion to transfer venue of the case to the Northern District of Texas is granted.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: February 16, 2007